UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12 CR 255 ERW (DDN) |
| | ) | |
| KENDALL N. MOORE and | ) | |
| MALLAM TIFAH, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge David D. Noce [ECF No. 63], recommending the denial of Defendants Kendall N. Moore's and Mallam Tifah's (collectively, "Defendants") Motion to Suppress Physical Evidence [ECF Nos. 42, 43]. Defendant Mallam Tifah did not object to Magistrate Judge Noce's Report and Recommendation; therefore, the Court concludes that the Magistrate Judge's findings were correct, and adopts the Magistrate Judge's findings of fact, conclusions of law, and recommendation in its entirety, as to Defendant Mallam Tifah.

Defendant Kendall N. Moore filed timely Objections to the Report and Recommendation, stating that her Motion to Suppress should not have been denied, because the Magistrate Judge found that numerous warrantless entries into Defendant Kendall N. Moore's home by the St. Louis Metropolitan Police Department ("SLMPD") were unreasonable under the Fourth Amendment [ECF No. 65]. Defendant Moore maintains the proper remedy for the unreasonable search is suppression of the evidence, and contends that the egregious nature of numerous unjustified searches outweighs the purpose of inevitable discovery.

The Court conducts a *de novo* review of those portions of a report or specified proposed findings to which timely objection is made. 28 U.S.C. § 636(b); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). As an initial matter, the Court notes that Defendant Moore has not made any objection to the Magistrate Judge's findings of fact, and the Court therefore adopts those facts in their entirety, and incorporates them herein by reference; a summary of the relevant facts will be set out below. The Court considers Defendant Moore's objection to the Magistrate Judge's conclusions and recommendation.

## I.    FINDINGS OF FACT

On April 5, 2012, the SLMPD dispatched officers, including Officer Nicholas Green, to respond to a general peace disturbance call at 4551 Newberry Terrace in St. Louis. When the SLMPD officers arrived, they found Defendant Kenadall Moore arguing with her neighbor Antonio Moore, who reported that Defendant Moore had displayed a firearm to him. Because the officers were unable to sort out the dispute, they attempted to issue both individuals summonses for general peace disturbance. However, Defendant Kendall Moore left the area before the officers could issue a summons to her.

`       After receiving a telephone call from Antonio Moore on April 11, during which they discussed the April 5 incident, Officer Green prepared a summons for Defendant Kendall Moore. Subsequently, Officer Green learned that Defendant Kendall Moore had several outstanding warrants, including one felony warrant. Officer Green and his partner, Officer Michael Mueller, drove to Defendant Kendall Moore's residence located at 4544 Newberry Terrace the following day, April 12, 2012, at approximately 3:52 p.m., to arrest Defendant Moore on the outstanding warrants, and to issue her the general peace disturbance summons.

When Defendant Moore responded to the officers' knock on her door, Officer Green spoke with her about the April 5 incident, and informed her that she would have to sign the ticket he was giving her. Defendant Moore stepped outside her residence to sign the ticket on her porch, wearing a loose fitting shirt and pajama bottoms. Officer Green then told her she was under arrest on the outstanding warrants, and he handcuffed her. Defendant Kendall Moore asked the officers if she could re-enter her residence to retrieve a jacket and turn off her oven. Officer Green told her that she could, but informed her that he and his partner would have to accompany her inside. Defendant Moore agreed to this condition, and all three individuals entered her residence.

As the officers accompanied Defendant Moore through her house while she got her jacket and turned off the oven, they saw, among other things, the following items in plain view: part of a carbine rifle sticking out of an open planter-type container used for growing marijuana; another firearm lying inside the container; jars that appeared to contain marijuana; bongs (including one attached to a gas mask-like mask) for smoking marijuana; literature about growing marijuana indoors; and brass knuckles attached to leather biker's vest. After seeing these items, the officers conducted a protective sweep of the first floor of Defendant's residence to be sure that no one else was present. Defendant Moore retrieved her jacket from a living room closet and turned off the oven in her kitchen. As the officers exited the residence with Defendant Moore, Officer Mueller seized the firearms seen in the planter container by the front door, and secured them in the trunk of the officers' patrol car. The officers also secured Defendant Moore in the patrol car. Officer Green called for a police cruiser to come for Defendant, and he notified his supervisor, Sergeant Albers, of what he and his partner had seen in the residence. Sergeant Albers and a cruiser responded promptly to 4544 Newberry Terrace.

Approximately one hour after Officer Green's and Officer Mueller's arrival at the residence, Defendant Mallam Tifah came to 4544 Newberry Terrace, informed the officers that he was the owner of the home, and stated that he lived there. When he tried to enter the residence, the officers stopped him. Ultimately, Defendant Tifah was handcuffed and detained for further investigation, due to the officers' observance of the firearms and marijuana in the home. When both Defendant Moore and Defendant Tifah said they would not consent to a search of the residence, Sergeant Albers determined that a search warrant was needed, and he dispatched Officer Green to the police station to prepare an affidavit for the warrant. A search warrant, based on Officer Green's sworn written affidavit describing the events leading up to Defendant Moore's arrest and Defendant Tifah's detention, as well as the items seen in plain view by Officer Green and Officer Mueller when they accompanied Defendant Moore into the residence, subsequently was issued at 9:00 p.m. on April 12, 2012.[1]

After the initial entry by Officers Green and Mueller, law enforcement officials entered the Newberry Terrace residence several times before the search warrant was signed by the State Court judge; however, no entry in to the residence unrelated to a security sweep resulted in the discovery of evidence not already observed in plain view during the security sweeps. The second entry occurred when law enforcement official returned the previously seized firearms to the place they were discovered and photographed them there. At that same time, the police conducted a security sweep of the residence for any other occupant. During a search of the upstairs floors, Officer Mueller smelled a strong odor of ether, which he knew was used to make Phencyclidine, coming from the master bedroom.

---

[1] In addition to Officer Green's firsthand account of facts, he additionally included in his affidavit facts supplied to him by Officer Mueller by telephone after Officer Green left the scene to apply for the warrant.

After Officer Green left the scene to apply for a search warrant, Officer Mueller and another officer conducted a more thorough security sweep. When Officer Mueller walked into the master bedroom, he saw in plain view several weapons and some currency on a shelf in an open closet. In the basement of the residence, Officer Mueller observed marijuana growing in buckets similar to the front-door bucket in which he had seen the firearms during his first entry. The SLMD officers found a double-padlocked door leading to the third floor, which they did not open. Ultimately, the officers secured the building's basement, first, and second floors. After this security sweep, the residence was considered secured by 5:38 p.m., and officers were stationed at both the front and back of the property.

At approximately 5:58 p.m., narcotic officers, who had been notified of the marijuana-growing operation found in the basement, arrived at the residence. After being briefed, these officers, along with three other law enforcement officials, entered the house, and later left without taking anything from the residence. Around 6:30 p.m., two uniformed officers entered the residence, exiting two minutes later.

When the officers subsequently executed the search warrant, they found and seized a substantial number of firearms, marijuana, and related items. They also found what the police bomb squad determined to be a pipe bomb explosive device. Other than the firearms originally seen and seized during the original entry by Officers Green and Mueller when they accompanied Defendant Moore, no officer seized and removed any item from the residence until the execution of the search warrant.

## II. DISCUSSION

In her Motion to Suppress [ECF No. 42], Defendant Moore asks the Court to suppress any evidence seized from her person or from her residence on April 12, 2012. Defendant Moore

asserts that the Indictment issued in her cause charges her with Manufacturing Marijuana, Possession with the Intent to Distribute Marijuana, Felon in Possession of a Firearm, and Maintaining a Drug Involved Premises. She further states that these charges stem from the SLMPD's April 12 search of her 4544 Newberry Terrace residence, and the SLMPD's subsequent alleged seizure of marijuana, marijuana plants, firearms, and other related items.

As grounds for her Motion to Suppress, Defendant Moore contends that any evidence seized from her person, or any premises in which she had a proprietary or possessory interest, was seized as a result of an unlawful search conducted without a warrant or other justification, and was therefore acquired in violation of her rights under the Fourth Amendment of the United States Constitution. Defendant Moore claims that law enforcement officials began searching and seizing items from the Newberry Terrace address prior to obtaining a search warrant. She further asserts that the search of the premises was not executed by duly authorized Federal Agents, and that "[i]n certain other respects the search was improperly executed." Defendant Moore argues that any search conducted, or evidence seized at the time of her arrest, was illegally performed, claiming that her arrest was not based upon probable cause, and that she did not give permission or consent for law enforcement officials to enter her residence.

Warrants are generally required to search a person's home, unless the "exigencies of the situation" make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978). Exigent circumstances that make warrantless searches objectively reasonable include situations that present a concern for the security of law enforcement officials. *United States v. Vance*, 53 F.3d 220, 221-22 (8th Cir. 1995)

In his Report and Recommendation, Magistrate Judge Noce stated the record is clear that, before the state court search warrant was issued at 9:00 p.m. on April 12, several groups of officers entered the premises at different times. Magistrate Judge Noce's findings describe five of these pre-warrant entries as "the first entry," "the second entry," "another security sweep," "entry by narcotics officers," and "further entry." Magistrate Judge Noce separately analyzed these warrantless entries, determining that "the first entry," "the second entry," and the "entry by narcotics officers" were constitutionally reasonable and did not violate the Fourth Amendment. He concluded, however, that the hearing record before the Court had not established that all of the warrantless entries were reasonable under the Fourth Amendment. Nevertheless, Magistrate Judge Noce determined that, even assuming an entry was unrelated to reasonable security sweeps, the exclusionary rule should not be applied. He concluded that the evidence seized pursuant to the warrant should not be suppressed because: 1) the warrant's supporting affidavit contained information that, by itself, would have provided the State Court a substantial basis for issuing the same search warrant for the entire residence; and 2) the same items would have been inevitably discovered and lawfully seized in the execution of the warrant. This Court agrees.

The first entry into the 4544 Newberry Terrace premises was made after Defendant Moore's arrest pursuant to outstanding warrants, when Officers Green and Mueller allowed Defendant Moore to reenter the residence to obtain a jacket and turn off her oven. Defendant Moore agreed to the officers' accompaniment, but, even if she had not, the officers were authorized under the Fourth Amendment to remain near her out of concern for their security, and due to their knowledge of the circumstances, including her alleged use of a firearm during the peace disturbance incident. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973); *United States v. Vance*, 53 F.3d at 220-22. Significantly, upon their entry into the residence, the

officers observed in plain view circumstances that increased concern for their personal safety, and which established the reasonableness of a security sweep of the entire residence. *United States v. Janis*, 387 F.3d 682, 687-88 (8th Cir. 2004). The subsequent security sweeps and the entry by the narcotics investigators were a reasonable response in view of the dangers the first entry revealed to the police officers.

Information contained in the warrant affidavit supported the State Court's finding of probable cause to believe that evidence, instrumentalities or fruits of a crime, or contraband, might be found in the Defendants' premises. *See United States v. Stevens*, 439 F.3d 983, 987-88 (8th Cir. 2006). The facts supplied by Officer Green in the supporting affidavit included information derived from the April 5 investigation events, and from Officer Green's and Officer Mueller's plain view original entry and followup security sweep investigation: 1) Defendant Moore's alleged use of a firearm in the peace disturbance incident; 2) the resulting investigation revealing outstanding arrest warrants for Defendant Moore; 3) Defendant Moore's arrest on April 12; 4) Defendant Moore's request to reenter the residence to get a jacket and turn off her oven; 5) Defendant Moore's acquiescence to being accompanied by the officers when she reentered the residence; 6) the two firearms, marijuana, bongs, brass knuckles, and marijuana-growing equipment and literature in plain view observed by the officers when they accompanied Defendant Moore; 7) Defendant Tifah's desire to enter the residence and his detention for further investigation; and 8) the observation of several security cameras on the residence.

The plain view doctrine allows law enforcement officials to seize evidence without a warrant when: 1) the officers have not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) the item's incriminating character is readily apparent; and 3) the officers have a lawful right of access to the object. *United States v. Hughes*,

940 F.2d 1125, 1126-27 (8th Cir. 1991). Once Officer Green and Officer Mueller were lawfully inside Defendant Moore's home, they saw weapons, marijuana, and drug paraphernalia in plain view; consequently, these items properly were seized under the plain view doctrine. *United States v. Janis*, 387 F.3d at 688. Because the affidavit information discussed above provided a substantial basis for issuing the search warrant for the entire residence, and because the seized items would have inevitably been discovered and seized during execution of the warrant, the evidence seized pursuant to the warrant should not be suppressed. *Nix v. Williams*, 467 U.S. 431, 443-44 (1984).

The Court will deny Defendants' motions to suppress.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kendall N. Moore's Motion to Suppress Physical Evidence [ECF No. 42] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Mallam Tifah's Motion to Suppress Physical Evidence [ECF No. 43] is **DENIED**.

Dated this   20th   day of February, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE